IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

---

MARAIN LARAYONDA RANKINS,

      Plaintiff,

v.

DR. TESSIER; DR. STACY; NAPHCARE;
SUPERVISOR AMBER; NURSE KAITLYNN;
ASHTON VANHORN; NURSE LIZ; POLK
COUNTY JAIL; POLK COUNTY; NURSE
MICHAEL; NURSE SANDY; NURSE
BAILEY; CO KYLE; NURSE MARY; KEVIN
SCHIDNER; LT. DEVINE; NURSE JOHN
DOES; DEPUTY OFFICER JOHN DOE; and
CO JOHN DOE,

      Defendants.

**No. 4:24-cv-00139-RGE-WPK**


**FURTHER INITIAL
REVIEW ORDER**

---

Plaintiff Marain Larayonda Rankins brings this pro se complaint under 42 U.S.C. § 1983, alleging claims based upon improper medical treatment he received and inadequate accommodations available for his disability. Compl. 5, ECF No. 1. Rankins was incarcerated at the Polk County Jail ("Jail") in Des Moines, Iowa, when the relevant events occurred. ECF No. 1 at 7. In the Court's first initial review order, it directed Rankins to amend his complaint to provide more information about his claims. Initial Review Order 2–7, ECF No. 4. Rankins has now filed an amended complaint. Am. Compl., ECF No. 6. He also filed a motion seeking additional relief. Def.'s Mot., ECF No. 7. He also requests the appointment of counsel. Pl.'s Mot. Appoint Counsel, ECF No. 8.

Rankins has another lawsuit pending in this Court alleging claims under 42 U.S.C. § 1983. *See Rankins v. Polk Cnty.*, 4:24-cv-00103-WPK (S.D. Iowa). In that case, the defendants moved to consolidate the two cases. Def.'s Am. Mot. Consol., 4:24-cv-00103 (S.D. Iowa), ECF No. 78.

Defendants in this case have not been served and no motion to consolidate is pending here. Therefore, this order is limited to the initial review of the amended complaint under 28 U.S.C. § 1915A.

## I.   INITIAL REVIEW STANDARDS

The Prison Litigation Reform Act requires federal courts to review all prisoner complaints filed against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). On review, the Court must identify the cognizable claims or dismiss the complaint, or any part of it, that it determines a) is frivolous or malicious, b) fails to state a claim upon which relief may be granted, or c) seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is "frivolous" if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A pro se complaint—one brought without the assistance of counsel—"must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). The Court must weigh all factual allegations in favor of the plaintiff unless the facts alleged are clearly baseless. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (determining what is "clearly baseless" is left to discretion of court ruling on in forma pauperis petition). Although Federal Rule of Civil Procedure 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation

omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (citations omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A complaint states a plausible claim for relief when its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## II.    DISCUSSION OF CLAIMS

Rankins has a spinal cord injury that limits his mobility. ECF No. 6-1 at 13, 14. Rankins uses a wheelchair. *Id.* at 4, 14. He needs assistance or supplies to accomplish some daily tasks, including using the bathroom and showering. *Id.* at 5–6, 10, 13. Rankins's claims relate to inadequate or inappropriate medical supplies and accommodations for his disability, the sufficiency of the medical treatment he received at the Jail, and his placement in medical hold because he uses a wheelchair. *Id.* at 3. Rankins was both a pretrial detainee and a convicted inmate at times while at the Jail. *Id.* at 4.

Rankins brings claims against thirteen individual Defendants, two institutional Defendants, one correctional officer John Doe, a Deputy Officer John Doe, and an unspecified number of Nurse John Does. *See generally* ECF Nos. 6, 6-1. He sues each individual Defendant in their official and individual capacities. ECF No. 6 at 2; ECF No. 6-1 at 1–2. Rankins seeks money damages, including punitive damages, and an injunction seeking adequate accommodations, medical and sanitary supplies, specific medications, and a wheelchair. ECF No. 6 at 5. The Court addresses

preliminary issues of the Jail's capacity to be sued and certain defendants' state-actor status before discussing Rankins's remaining claims.

### A.    Polk County Jail Not Amendable to Suit

Rankins brings claims against the Polk County Jail because he was incarcerated there at the time his claims arose. *See* ECF No. 6-1 at 12, 13. He states the Jail failed to follow the law regarding individuals with disabilities, providing improper accommodations, transportation, and equipment. *Id.* He requests an injunction requiring the Jail to provide safe transportation, grab bars, and cells and showers accessible to individuals with disabilities.

Rankins cannot state a claim against the Jail because it is not a legal entity subject to suit. *See Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (unpublished per curiam) (finding county jail immune from suit). All of Rankins's claims against the Jail are dismissed.

### B.    Naphcare and Staff as State Actors

Rankins alleges claims against contract healthcare provider Naphcare and Naphcare's medical staff. Rankins's amended complaint asserts Naphcare is a private contractor that employs the medical staff located at the Polk County Jail. ECF No. 6-1 at 1–2, 12. Rankins alleges Naphcare failed to adequately train its medical staff to care for an individual with a disability, resulting in Rankins's alleged injuries.

"'Only a state actor can face § 1983 liability' for acting under color of state law." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Doe v. N. Homes, Inc.*, 11 F.4th 633, 637 (8th Cir. 2021)). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326

(1941)). To prove a private entity was a state actor, 1) "'the [constitutional] deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and [2]] 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Id.* at 49 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The state has a duty to provide adequate medical treatment for incarcerated inmates. *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir.1989). "[W]here the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment.'" *Id.* "It is only those physicians authorized by the State to whom the inmate may turn." *West*, 487 U.S. at 55. "By virtue of this relationship, effected by state law, [a medical provider] . . . authorized and obliged to treat prison inmates. . . . does so 'clothed with the authority of state law.'" *Id.* at 55 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941).

Here, Rankins has sufficiently alleged Naphcare and its staff were acting under color of state law. Rankins was detained in the custody of Polk County which gave rise to the obligation to provide medical care and a safe, sanitary environment. Polk County contracted with Naphcare to fulfill its constitutional duty to Rankins. "If [Naphcare and its staff] misused [their] power by demonstrating deliberate indifference to [Rankins's] serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish [Rankins] by incarceration and to deny him a venue independent of the State to obtain needed medical care." *Id.* Based on the allegations in the amended complaint, Naphcare and its medical staff were state actors to the extent they provided, or failed to provide, medical treatment and medical or sanitary supplies, such as catheters, bandages, and clean clothes and bedding, while Rankins was in the physical custody of Polk County.

### C.    Multi-Party Claims

#### 1.    Medical Supplies

Rankins brings claims for deliberate indifference to his serious medical needs and his conditions of confinement against Dr. Stacy, Dr. Tessier, Nurse Mary, Nurse Liz, Ashton Vanhorn, Nurse Bailey, Nurse Kaitlynn, Nurse Michael, and the Nurse John Does for failing to provide him with appropriate medical and sanitary supplies. Rankins also seeks his personal wheelchair, as the one the Jail provided caused pressure sores. ECF No. 7 at 1. To establish deliberate indifference to a serious medical need, Rankins must show "(1) that he suffered from an objectively serious medical need and (2) that the jail officials had actual knowledge of that need but deliberately disregarded it." *Hancock v. Arnott*, 39 F.4th 482, 486 (8th Cir. 2022). The deliberate-indifference standard also applies to Rankins's claim alleging inadequate conditions of confinement. *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008) ("A claim based on deliberate indifference requires a substantial risk of harm to the inmate that an officer knew of and disregarded.").

At this early stage, the Court assumes Rankins brings claims related to his status as a pretrial detainee and as a convicted prisoner. A "pretrial detainee receives 'at least the same protections that convicted prisoners receive under the Eighth Amendment.'" *Smith v. Lisenbe*, 73 F.4th 596, 600 (8th Cir. 2023) (quoting *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021)). A pretrial detainee's claim is also analyzed using the deliberate-indifference standard. *Id.*

Rankins requires the use of a catheter and other medical devices and sanitary supplies to urinate and defecate. ECF No. 6-1 at 5–6, 10.[1] When Rankins went without these required supplies at the Jail, he was forced to soil himself. *Id.* at 5–6. When he did, Rankins was forced to sit in unsanitary conditions and experience skin breakdown, pressure sores, kidney pain, and urinary

---

[1] Rankins uses the phrases "bathroom supplies" or "supplies" in his complaint, but the Court construes those phrases broadly and does not limit its interpretation to a catheter.

tract infections. *Id.* at 5–6, 10.

Rankins implies he received these supplies each morning or at set times, but if he ran out during the day, staff refused to provide him with additional supplies. *Id.* at 6 ("She'll say no you got them [this] morning . . . you'll just have to wait [until] tomorrow at morning time."). However, there were times Rankins did not receive supplies, or staff was informed he lacked supplies, and staff still refused to provide them. *Id.* at 6. When informed Rankins was out of supplies one night, Nurse Michael told Rankins he was "shit out of luck. You can't get no more." *Id.* He instructed Rankins to "deal with it or reuse [the catheter.]" *Id.* Reusing a catheter can cause infections. *Id.* Rankins asserts staff did not want to bring him supplies and they claimed Rankins was using the bathroom too often. *Id.* at 13.

Rankins adequately alleges deliberate indifference claims based on his medical needs and his conditions of confinement against Dr. Stacy, Dr. Tessier, Nurse Mary, Nurse Liz, Ashton Vanhorn, Nurse Bailey, Nurse Kaitlynn, and Nurse Michael for refusing bathroom supplies. He alleges these Defendants knew of his lack of supplies and the issues that lack caused, but refused to provide him supplies. He suffered skin breakdown, urinary tract infections, and kidney pain as a result. These claims may proceed.

Rankins fails to adequately plead claims based on medical and sanitary supplies against any Nurse John Doe. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017). While Rankins has pleaded specific facts about each of the other medical professionals, he does not allege specific facts related to any Nurse John Does. These claims are dismissed.

Rankins also fails to adequately plead a claim for the Jail to acquire his personal wheelchair. Rankins seeks his personal wheelchair because the wheelchair the Jail provided caused

pressure sores. ECF 7 at 1. However, Rankins was transferred from the Jail and now resides at the Iowa Medical and Classification Center. "[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Rankins's transfer from the Jail to the Iowa Medical and Classification Center moots his claim for injunctive relief because he no longer resides at the Jail.

### 2.    Wound Care

Rankins had open wounds at various points during his time at the Jail. ECF No. 6-1 at 5–6. Rankins brings claims against Nurse Sandy, Nurse Liz, Nurse Bailey, Nurse Kaitlynn, and the Nurse John Does, alleging they refused him bandages or left his wounds exposed. *Id.* These individuals knew of Rankins's wounds and ignored his requests for supplies and assistance dressing them. *Id.* Rankins suffered pressure sores, skin breakdown, and a blood infection while at the Jail, which he alleges Defendants caused by forcing him to sit in his own waste and failing to properly clean and care for his wounds. *Id.* Rankins adequately pleads deliberate indifference to serious medical needs claims against Nurse Sandy, Nurse Liz, Nurse Bailey, and Nurse Kaitlynn related to wound care. These claims may proceed.

Rankins fails to adequately plead claims based on wound care against the Nurse John Does. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White*, 865 F.3d at 1081. While Rankins pleads specific facts about each of the other medical professionals, he does not allege specific facts related to the Nurse John Does. These claims are dismissed.

### 3.    Americans with Disabilities Act

Rankins alleges violations of Title II and III of the Americans with Disabilities Act ("ADA") against some Defendants. ECF No. 6-1 at 13. Rankins brings claims against 1) Dr. Stacy for failing to provide sanitary and medical supplies and an adequate shower chair, 2) Dr. Stacy for

8

segregating Rankins in medical holding rather than with the general jail population; 3) Dr. Tessier for a delay in supplying physical therapy and specific pain medication, 4) Lieutenant DeVine for restricting Rankins's shower use, and 5) Kevin Schneider, Polk County Jail, and Polk County for not providing ADA compliant cells and transportation. *Id.*

> a.    Title II

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Hall v. Higgins*, 77 F.4th 1171, 1180–81 (8th Cir. 2023) (quoting 42 U.S.C. § 12132). To state a cognizable claim under Title II, Rankins must allege "'(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [Jail's] services, programs, or activities, or was otherwise subjected to discrimination by the [Jail]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.'" *Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020) (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010)).

Rankins's claims against Dr. Stacy, Dr. Tessier, Lieutenant DeVine, and Kevin Schneider under Title II fail because they are individual defendants. Individuals are not subject to suit under Title II. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999). Title II's scope is limited to "public entities," which is statutorily defined and does not include individuals. *See* 42 U.S.C. § 12131(1). Rankins's Title II claims against Dr. Stacy, Dr. Tessier, Lieutenant DeVine, and Kevin Schneider in their individual capacities are dismissed.

Rankins adequately pleads a claim under Title II of the ADA against Polk County related to transportation, his shower, his cell accommodations, and his segregated housing. Rankins is a qualified individual with a disability under the statute. A "qualified individual with a disability" is

"an individual with a disability who, with or without reasonable modifications . . . , meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Rankins has a back injury that limits his mobility and function to such an extent he struggles with daily activities, such as showering and using the bathroom. ECF No. 6-1 at 3, 5–6, 14. Rankins is a qualified individual with a disability.

Rankins alleges he was excluded from participation in, and denied the benefits provided by, Polk County at the Jail due to his disability. Rankins's disability requires the use of a wheelchair, which makes unsecured transportation dangerous. *Id.* at 12. Polk County failed to secure Rankins or his wheelchair during transport, which resulted in Rankins falling out of his wheelchair and injuring himself. *Id.* As described by Rankins, this failure deprived him of safe transport, which other inmates enjoyed. *Id.* Polk County provided showers to inmates for daily use, but Rankins was limited to three showers per week. *Id.* at 11. Rankins alleges Lieutenant DeVine told Rankins his showering was limited due to his disability and staffing shortages. *Id.* Finally, while Polk County provided cells that are accessible to inmates without disabilities, the cells lacked accommodations Rankins needed for mobility, safety, and comfort. *Id.* Rankins adequately alleges he was deprived of safe transportation, daily showers, and a cell with certain accommodations by Polk County because of his disability. These claims may proceed.

Rankins fails to state a claim as to the location of his housing within the Jail. Rankins alleges Polk County placed him in "medical hold," a separate housing unit from the general population, based on his disability. Rankins does not allege he lost the benefit of the Jail's services by residing in the medical hold unit, compared to the residing with the general population. Title II ensures that individuals with disabilities receive "meaningful access" to government services, but Rankins does not allege how the location of his housing unit deprived him of meaningful access

to the Jail's services. *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009) ("[A] public entity is required to make reasonable accommodations where necessary to give 'meaningful access.'"). This claim is dismissed.

      b.    Title III

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "Title III of the ADA applies to private entities providing public accommodations, however, not to public entities." *DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.*, 126 F.3d 1102, 1106 (8th Cir. 1997).

> A person alleging discrimination under Title III must show (1) that he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation.

*Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999).

Rankins's Title III claims against Dr. Stacy, Dr. Tessier, Lieutenant DeVine, and Kevin Schneider fail because he does not allege they own, lease, or operate the Jail. *See DeBord*, 126 F.3d at 1106; *Amir*, 184 F.3d at 1027–28.

The Title III claims against Polk County fail because Title III is limited to private entities and Polk County is a public entity. Title II is the appropriate avenue to bring a claim against a public entity. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("State prisons fall squarely within the statutory definition of 'public entity[.]'"). Rankins's Title III claims against all Defendants are dismissed.

### 4.   CO John Doe and Deputy John Doe

Rankins brings claims against two deputies who were transporting Rankins to court, alleging they were deliberately indifferent to Rankins's safety. ECF No. 6-1 at 12. The Court construes those deputies to be CO John Doe and Deputy Officer John Doe. *Id.* at 1. The deputies placed Rankins's wheelchair in the vehicle, but did not remove Rankins from his chair, secure his chair, or provide him with a seatbelt. *Id.* at 12. While the vehicle was speeding, Rankins was thrown from his wheelchair. *Id.* Rankins injured his leg, neck, and back when he fell. *Id.*

The Eighth Circuit has found failing to secure an inmate with a seatbelt may be deliberate indifference. *Brown v. Fortner*, 518 F.3d 552, 559 (8th Cir. 2008); *see also Brown v. Morgan*, 39 F.3d 1184, 1994 WL 610993 (8th Cir. 1994) (unpublished table decision). In *Brown v. Morgan*, the driver acted with deliberate indifference by "refusing to let [the inmate] wear a seat belt, driving at a high rate of speed in bad weather, refusing to slow down despite [the inmate's] pleas for him to do so, purposely speeding up, and smiling when he saw that [the inmate] was scared, asking, 'Are you scared?'" *Morgan*, 39 F.3d 1184, 1994 WL 610993, at *1. In *Brown v. Fortner*, the driver refused the inmate's requests to slow down and provide a seat belt. *Brown v. Fortner*, 518 F.3d 552, 559 (8th Cir. 2008). In addition, the driver was "driving in excess of the speed limit, following too closely to the lead van, crossing over double-yellow lines, and passing non-convoy cars when the road markings clearly prohibited doing so." *Fortner*, 518 F.3d at 559.

Rankins fails to state a claim against CO John Doe and Deputy John Doe. Rankins does not discuss either defendants' knowledge, intent, inadvertence, or animus related to their failure to secure him during transport. He asserts they were speeding but does not assert they taunted or harassed him or denied requests to slow down or provide a seatbelt. Nor does Rankins allege their driving was dangerous, aside from speeding. "[D]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the

known risk." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (alteration in original). Rankins's complaint lacks information that would satisfy this standard. Rankins fails to allege deliberate indifference by CO John Doe and Deputy John Doe. These claims are dismissed.

### 5.    Kevin Schneider and Polk County

Rankins brings a claim against Kevin Scheidner—the Polk County Sheriff—and Polk County. ECF No. 6-1 at 1–2. Rankins alleges Schneider and Polk County did not follow jail protocol for individuals with disabilities, including failing to provide: 1) safe transportation for Rankins, 2) adequate accommodations to Rankins, and 3) staff training to allow staff to adequately care for Rankins. *Id.* at 5.

Rankins's claims against Schneider and Polk County related to safe transportation protocols and adequate accommodations fail. Rankins does not allege either party was directly involved in those events. "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001). A supervisor is liable under § 1983 if: "he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Id.* (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996) (citations omitted in original)). "[U]nder § 1983, local governments are responsible only for 'their own illegal acts.' . . . . They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rankins does not allege Schneider or Polk County were involved in any of the incidents he discusses in his amended complaint. Rankins alleges both parties had a general duty to him but were not directly involved. Rankins's claims against Schneider and Polk County related to transportation and accommodations are dismissed.

Rankins fails to allege a failure-to-train claim against Schneider and Polk County regarding safe transportation protocols. For his failure-to-train claim to survive, Rankins must allege

(1) [Schneider and Polk County's] . . . training practices [were] inadequate;

(2) [Schneider and Polk County] were deliberately indifferent to the rights of others in adopting [the training practices], such that the "failure to train reflects a deliberate or conscious choice by [Schneider and Polk County]," and

(3) an alleged deficiency in [Schneider and Polk County's] hiring or training procedures actually caused [Rankins's harm].

*Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Where the underlying alleged failure to train does not itself result in some other constitutional violation, the failure-to-train claim must fail. *See City of Los Angles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of [a particular defendant], the fact that the departmental regulations might have authorized the [constitutional violation] is quite beside the point.").

Rankins alleges Schneider and Polk County failed to train the two Doe Defendants because they did not secure Rankins while transporting him. However, the Court has found no plausible allegation of a constitutional violation related to this incident. Rankins's failure-to-train claim related to transportation against Schneider and Polk County is dismissed because the incident did not violate Rankins's constitutional rights.

Rankins adequately alleges a failure-to-train claim against Schneider and Polk County related to caring for an inmate with a disability. He asserts Schneider and Polk County "did not have staff trained right on [criteria] did not have jail official following Iowa Code etc. causing me injury." ECF No. 6-1 at 5. The Court considers all of Rankins's allegations against Defendants, to the extent they are relevant.

"Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality —a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."

*City of Canton*, 489 U.S. at 389. "A single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability. . . . However, as the number of incidents grow, and a pattern begins to emerge, a finding of tacit authorization or reckless disregard becomes more plausible." *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989).

Rankins alleges a pattern of conduct on behalf of a number of Jail or medical staff that happened throughout his time at the Jail. Defendants consistently told Rankins he needed to wait for a designated time before he could receive supplies, knowing Rankins needed to use the bathroom. *Id.* at 5–6, 10. They knew the likely outcome and the adverse health and sanitary concerns that would result from their treatment of Rankins. *Id.* at 5–6, 10. Rankins sufficiently alleges Schneider and Polk County failed to train staff in caring for disabled inmates. The alleged widespread nature of the issue suffices at this early stage to plausibly allege the necessary deliberate and conscious choice. The lack of training allegedly caused Rankins's skin issues, pressure sores, kidney pain, and urinary tract infections. These claims may proceed.

### D. Single-Party Claims

#### 1. Dr. Tessier

Rankins alleges Dr. Tessier delayed Rankins's physical therapy treatment and provided inappropriate pain medication. ECF No. 6-1 at 4. To succeed on a deliberate indifference claim alleging a delay in treatment, Rankins must show a "detrimental effect caused by the delay." *Cheeks v. Belmar*, 80 F.4th 872, 878 (8th Cir. 2023). A prisoner's disagreement with treatment decisions does not qualify as deliberate indifference. *Fourte v. Faulkner Cnty.*, 746 F.3d 384, 387 (8th Cir. 2014).

Rankins fails to state a claim related to his delay in receiving physical therapy. A medical professional at Unity Point prescribed physical therapy for Rankins in April or May of 2023. ECF

No. 6-1 at 4. Rankins did not receive physical therapy for six to seven months. *Id.* After he began receiving physical therapy, he did not receive treatment on a frequent basis until 2024. *Id.* However, Rankins does not allege any harm resulting from the delay in receiving physical therapy. While Rankins may not have started as quickly as he would have liked or seen his physical therapist as often as he wanted, those alleged deficiencies do not rise to the level of constitutional violations without evidence of a detriment suffered because of the delay.

Rankins also fails to state a claim for deliberate indifference to a serious medical need related to his pain medication. Rankins told Tessier he took oxycontin and gabapentin at home. Dr. Tessier promised to investigate the issue, but Rankins never received those medications. Rankins asserts other inmates receive narcotics in connection with cancer treatment. Mot. Nunc Pro Tunc 1, ECF No. 7. Rankins states Dr. Tessier's refusal caused him pain. However, Rankins notes that other pain medications are available to him. *Id.* at 7. Rankins's request for specific narcotics is a request for preferred medication, rather than medically necessary medication. Rankins fails to allege the absence of a preferred medication deprived him of medically necessary medication. His allegation does not rise to the level of a constitutional violation. *See Fourte*, 746 F.3d at 387. These claims are dismissed.

### 2. Dr. Stacy

Rankins alleges Dr. Stacy refused to allow Rankins to use an appropriate shower chair. ECF No. 6-1 at 3, 10. At first, Dr. Stacy refused to allow him any shower chair. *Id.* at 10. Rankins later received a shower chair, but exactly what happened from there is unclear. At one point, Dr. Stacy ordered staff to remove one of the arms of his shower chair, which caused Rankins's leg to get stuck and created an unsafe environment. *Id.* at 3. At another point, Dr. Stacy provided Rankins a shower chair with a broken back. *Id.* at 11. The correctional officer helping Rankins noticed the broken back and contacted Nurse Michael about it. Nurse Michael informed the officer that Dr.

Stacy approved the chair, so "it's fine." *Id.* at 11. Rankins fell through the back of the chair and injured his spine and head. *Id.* As a result of the missing arm and broken back of the shower chair, Rankins fell in the shower at the Jail five to six times. *Id.* at 10.

In July 2023, Rankins fell in the shower and was sent to Mercy for x-rays and an MRI of his back. *Id.* at 10. The Mercy doctor instructed Rankins to return for additional testing if his spine continued to hurt. *Id.* at 10. Rankins informed Dr. Stacy that his back continued to hurt, but she refused additional testing. *Id.*

In November or December 2023, Rankins fell in the shower and cut his foot. *Id.* at 7. He called for a nurse, but no one arrived to check his wound. *Id.* Rankins's cut became infected. *See id.* Rankins became sick and weak, and he went into septic shock *Id.* Rankins informed Jail staff and was told to "fill out a kite," which Rankins did not have the strength to do. *Id.* Eventually, a staff member checked on Rankins and told Rankins the officer had the ability to call the sergeant and circumvent the kite process. *Id.* However, Dr. Stacy did not see Rankins until a few days after he first reported the infection. *Id.* Rankins was sent to the hospital and diagnosed with a blood infection. *Id.* He required surgery to drain fluid and was placed on antibiotics. *Id.* The doctor gave Rankins special dressings for his wounds, but Dr. Stacy did not use the special bandages. *Id.*

Rankins adequately pleads a claim for deliberate indifference against Dr. Stacy related to the shower chair and his resulting injuries. Rankins alleges Dr. Stacy knew she was altering the chair, knew the chair was broken, and approved it. He fell five to six times, injuring his head and spine. However, Rankins has failed to state a claim against Dr. Stacy for using a different bandage than the one provided by outside medical professionals. There is no indication the alternative bandage caused Rankins harm. Rankins's claim against Dr. Stacy related to his shower chair may proceed.

### 3. Nurse Mary

Rankins brings a claim against Nurse Mary for a statement she made while trying to put an IV into his arm before Rankins was sent to the hospital for his infection. ECF No. 6-1 at 5, 8. Nurse Mary was struggling to put an IV into Rankins when she joked with a correctional officer and asked if the officer would be able to insert the IV. *Id.* The correctional officer was not a licensed healthcare professional. *Id.* Rankins objects to Nurse Mary's joke while he was very sick because it was a serious situation. *Id.* "[V]erbal harassment, in the form of threats and unflattering remarks directed at plaintiffs, does not rise to the level required to establish a constitutional violation." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 759 (8th Cir. 2001). While Nurse Mary's statement may have been unprofessional given the circumstances, it does not rise to the level of a constitutional violation. This claim is dismissed.

### 4. Lieutenant DeVine

Rankins brings a claim against Lieutenant DeVine because he refused to allow Rankins to shower every day, as allowed by Jail rules. ECF No. 6-1 at 11. Lieutenant DeVine told Rankins he could only shower three times per week due to Rankins's disability and a staffing shortage. *Id.* The Court construes this as an equal protection claim against Lieutenant DeVine.

"[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). Individuals with disabilities are not a protected class for the purpose of equal protection claims. *Doe v. Nebraska*, 345 F.3d 593, 603 (8th Cir. 2003). Nor does Rankins allege the deprivation of a fundamental right. *See Perez v. Norris*, No. 5:09CV00114 WRW, 2009 WL 2135876, at *3 (E.D. Ark. July 15, 2009) (finding no fundamental right at issue when inmate brought shower-denial claim).

If a plaintiff brings an equal protection claim without an allegation that he is a member

of a protected class or the defendant violated a fundamental right, courts review equal protection claims by determining whether 1) the defendant intentionally treated the plaintiff differently than other similarly situated inmates, and 2) the defendants lacked a rational basis for doing so. *Nolan v. Thompson*, 521 F.3d 983, 989–90 (8th Cir. 2008).

"In determining whether a disabled inmate is similarly situated to nondisabled inmates, this Court has examined whether the disabled plaintiff is equally capable for the purpose at issue." *Hansen v. Rimel*, 104 F.3d 189, 190 (8th Cir. 1997). For example, in *More v. Farrier*, inmates without disabilities were provided cable television, but inmates with disabilities were housed separately and provided cable television. 984 F.2d 269, 270 (8th Cir. 1993). The Eighth Circuit held "[the inmates with disabilities] are as capable of watching television in their cells as any other prisoner." *Id.* at 271. Thus, they were similarly situated under the Equal Protection Clause. *Id.* However, in *Hansen*, an inmate who was hearing impaired brought an equal protection claim related to the use of a telephone, requesting a telephone designed for people with hearing disabilities. 104 F.3d at 190. The inmate's claim failed because he was not similarly situated with the inmates who did not suffer hearing impairments. *Id.*

Rankins's equal protection claim fails because he is not similarly situated to inmates without mobility concerns. Rankins requires the use of a chair while he showers. ECF No. 6-1 at 5–6, 10, 13. The Jail and Rankins have expressed and acted on concerns regarding Rankins's shower chair and safety in the shower. *Id.* at 3, 7, 8, 10, 11, 13. Rankins has also fallen multiple times while in the shower, once requiring a trip to the hospital. *Id.* at 10. This claim is dismissed.

### 5.    Supervisor Amber

Rankins brings a claim against Supervisor Amber because she refused to allow Rankins an appropriate seat cushion. ECF No. 6-1 at 5, 10. Rankins was prescribed and sized for a seat cushion due to his disability. *Id.* at 10. Rankins waited approximately four months to receive the cushion,

during which he suffered from pressure sores. *Id.* It does not appear Rankins ever received his custom seat cushion. *Id.* at 5, 10. However, Supervisor Amber provided Rankins a non-custom cushion, which also caused him pressure sores. *Id.* at 5. When asked about his seat cushion, Supervisor Amber said, "I'll get you what I want you'll just have to deal with it." *Id.* at 5.

Rankins alleges a deliberate indifference claim against Supervisor Amber. When discussing the pressure sores of a paraplegic inmate, the Eighth Circuit said,

> Pressure (bed) sores are lesions caused by unrelieved compression of tissues between bone and surrounding surfaces. Bed sores are slow-healing and can be fatal if untreated. Proper treatment is to relieve pressure by turning the patient at least every two hours, and keeping the wounds free of bacteria and dead tissue (because bacteria grow in dead tissue and can greatly compromise wound healing).

*Schaub v. VonWald*, 638 F.3d 905, 910 (8th Cir. 2011). The Eighth Circuit found pressure sores and the need to change wound dressings were objectively serious medical needs. *Id.* at 922. Rankins alleges Supervisor Amber knew of and denied his requests for his custom cushion, resulting in pressure sores. The effect the seat cushion ultimately had on Rankins remains to be seen, but at this early stage of litigation, Rankins alleges a deliberate indifference claim against Supervisor Amber related to his seat cushion. This claim may proceed.

### 6. CO Kyle

Rankins brings a claim against CO Kyle for injuring Rankins while transporting him to his cell. ECF No. 6-1 at 4. CO Kyle was transporting Rankins in his wheelchair with handcuffs on. *Id.* CO Kyle "threw" Rankins out of his chair with handcuffs on. *Id.* Rankins hit the sink and the wall, injuring his head, neck, and spine. *Id.* CO Kyle did not assist Rankins. *Id.* Instead, he left Rankins on the floor crying for fifteen to twenty minutes without medical help, while CO Kyle laughed at Rankins and made "gruesome remarks." *Id.*

Rankins adequately pleads a deliberate indifference claim related to his safety. CO Kyle knew Rankins had limited mobility, was in a wheelchair, and had his hands cuffed. He "threw"

Rankins out of his chair and laughed. Such conduct, which the Court assumes as true at this stage, adequately alleges a deliberate indifference to Rankins's safety. This claim may proceed.

### 7.    Naphcare

Rankins brings a failure-to-train claim against Naphcare for deliberate indifference to his serious medical needs. As the Court discussed above, Rankins has sufficiently alleged Naphcare and its medical staff are state actors to the extent they provided, or failed to provide, medical treatment and medical or sanitary supplies, such as catheters, bandages, and clean clothes and bedding.

Rankins alleges a pattern of conduct by the medical staff provided by Naphcare that occurred throughout his time at the Jail. Naphcare staff consistently told Rankins he needed to wait for a designated time before he could receive supplies, knowing Rankins needed to use the bathroom. They knew the likely outcome and the adverse health and sanitary concerns the delay would cause. Rankins sufficiently alleges Naphcare staff were inadequately trained in caring for disabled inmates. The widespread nature of the issue is sufficient for the Court to find this training deficiency was a deliberate and conscious choice. And the lack of training caused Rankins's skin issues, urinary tract infections, kidney pain, and pressure sores. Rankins has adequately pleaded a failure-to-train claim against Naphcare. This claim may proceed. *Howard*, 887 F.2d at 138 ("as the number of incidents grow, and a pattern begins to emerge, a finding of tacit authorization or reckless disregard becomes more plausible.").

## III.    MOTION FOR COUNSEL

Rankins requests the appointment of counsel. ECF No. 8. "Pro se litigants have neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). Where a litigant is proceeding in forma pauperis in a civil case, the Court may request an attorney to represent such litigant upon finding the plaintiff and

the Court "will benefit from the assistance of counsel" based on the nature of the case. *Id.* (quoting 28 U.S.C. § 1915(e)(1)). Criteria for district courts to consider in deciding whether to recruit counsel include "the factual and legal complexity of the underlying issues, the existence of conflicting testimony, and the ability of the indigent plaintiff to investigate the facts and present his claims." *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (quotation marks and citation omitted).

Rankins's claims are complex and may require the discovery of sensitive material. The Court finds it would be beneficial for Rankins to be represented by counsel. Rankins's motion is granted.

## IV.   SUMMARY AND CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff Marain Larayonda Rankins may proceed with the following claims:

1.  for deliberate indifference to his serious medical needs and his conditions of confinement against Defendants Dr. Stacy, Dr. Tessier, Nurse Mary, Nurse Liz, Ashton Vanhorn, Nurse Bailey, Nurse Kaitlynn, and Nurse Michael based on provision of medical and sanitary supplies;

2.  for deliberate indifference to his serious medical needs against Defendants Nurse Sandy, Nurse Liz, Nurse Bailey, and Nurse Kaitlynn based on failure to treat Rankins's wounds;

3.  for violation of Title II of the Americans with Disabilities Act against Defendant Polk County based on transportation in a vehicle, showers, and accessible cells;

4.  for failure to train against Defendants Polk County, Kevin Schneider, and Naphcare based on caring for an inmate with a disability;

5.      for deliberate indifference to his serious medical needs against Defendant Dr. Stacy

based on Rankins's shower chair;

6.      for conditions of confinement against Defendant Supervisor Amber based on

Rankins's seat cushion; and

7.      for deliberate indifference to his safety against Defendant CO Kyle based on CO

Kyle's transportation of Rankins within the Jail;

Service of process shall issue to these defendants and to the Polk County Attorney. The

Polk County Attorney is directed to notify this Court immediately if she lacks the consent of these

defendants to appear generally on their behalf and to submit to the jurisdiction of the Court.

Because the Court has found that a reply is necessary pursuant to 42 U.S.C. § 1997e(g)(2),

Defendants must reply to this complaint within sixty days.

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED** because

they "lack[] an arguable basis either in law or in fact," *Neitzke*, 490 U.S. at 325:

1.      all claims against Defendants Polk County Jail, Lieutenant DeVine, and John Doe

Nurses;

2.      for violation of Title II the Americans with Disabilities Act against Defendants Dr.

Stacy, Dr. Tessier, and Kevin Schneider and for the location of Rankins's housing;

3.      for violation of Title III of the Americans with Disabilities Act against all

Defendants;

4.      for injunctive relief seeking his personal wheelchair;

5.      for constitutional violations against Defendant Polk County and Kevin Schneider

based on transportation within the Jail;

6.      for constitutional violations against Defendant Nurse Mary based on her joke while

Rankins was sick;

7.     for violation of equal protection against Defendant Lieutenant DeVine based on
       Rankins's shower schedule; and

8.     for deliberate indifference to Rankins's safety against Defendants CO John Doe
       and Deputy John Doe based on transportation within the Jail.

   **IT IS FURTHER ORDERED** that Plaintiff Marain Larayonda Rankins's Motion
Seeking Additional Relief, ECF No. 7, is **DENIED**.

   **IT IS FURTHER ORDERED** that Plaintiff Marain Larayonda Rankins's Motion to
Appoint Counsel, ECF No. 8, is **GRANTED**. The Clerk of Court is directed to find counsel to
represent Rankins.

   **IT IS SO ORDERED**.

   Dated this 25th day of June, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE